1

2

3

4

5

6

7

8

9

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

10

11

12  KELLY MULLINS MOORE,                )   1:07-CV-01753 JMD HC
                                        )
13              Petitioner,             )   ORDER DENYING PETITION FOR WRIT
                                        )   OF HABEAS CORPUS
14       v.                             )
                                        )   ORDER DIRECTING CLERK OF COURT
15  M.C. KRAMER,                        )   TO ENTER JUDGMENT
                                        )
16              Respondent.             )   ORDER DECLINING ISSUANCE OF
    _____ )   CERTIFICATE OF APPEALABILITY

17

18          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

19  pursuant to 28 U.S.C. § 2254.

20                              **PROCEDURAL HISTORY**

21          Petitioner is currently incarcerated at Folsom State Prison in Folsom, California.  (Pet. at 1).

22  Petitioner's custody arose from a judgement of the Madera County Superior Court.  (Id).  Petitioner

23  was convicted in September 2005 of evading a police officer (Cal. Veh. Code § 2800.3), unlawful

24  driving or taking of a vehicle (Cal. Penal Code § 10851(a)), and receiving stolen property (Cal. Penal

25  Code § 496d(a)).  (Answer at 1).  The jury further found true that Petitioner had a serious felony

26  under California's Three Strikes Law (Cal. Penal Code § 667(b)-(i)).  (Id).  Petitioner's sentence was

27  enhanced for two prior prison terms pursuant to California Penal Code section 667.5(b).  (Pet. at 2).

28  Petitioner was sentenced to a total prison term of nine years and four months.  (Id).

1    Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District.

2    (Answer at 2; Pet. at 3).  The Court of Appeal issued a reasoned opinion on March 1, 2007, affirming

3    Petitioner's conviction.  (*See* Lod. Doc. 4).

4    Petitioner subsequently sought review in the California Supreme Court.  (Pet. at 3).  The

5    California Supreme Court summarily denied the petition for review on May 16, 2007. (Id.)

6    Petitioner filed the instant petition for writ of habeas corpus with the federal court on

7    December 3, 2007.[1]   Respondent filed an answer on November 7, 2008.

8    <u>Consent to Magistrate Judge Jurisdiction</u>

9    On December 17, 2007, Petitioner consented, pursuant to Title 18 U.S.C. section 636(c)(1),

10   to have a magistrate judge conduct all further proceedings, including entry of the final judgment.

11   (Court Doc. 5).

12   On August 7, 2008, Respondent also consented to the jurisdiction of a magistrate judge.

13   (Court Doc. 9).

14   On June 26, 2009, the case was reassigned to the undersigned for all further proceedings.

15   (Court Doc. 22).

16   FACTUAL BACKGROUND[2]

17   On August 2, 2003, at around 11:00 p.m., Madera County Sheriff's
     Deputy-now Detective-Tyson Pogue was on patrol in Oakhurst, in uniform, in a
18   marked sheriff's patrol vehicle that was equipped with a light bar and siren. Deputy
     Pogue passed an older black Mustang traveling in the opposite direction at high speed
19   with a burned out taillight. Deputy Pogue made a U-turn and caught up to the
     Mustang about 5 to 10 seconds later. Although it was dark, the patrol vehicle's
20   headlights shined through the rear of the Mustang such that Deputy Pogue clearly saw
     the driver had a shaved head and the passenger had hair. From about two car lengths
21   behind, Deputy Pogue turned on his emergency lights, including a red light. The
     Mustang then sped off for about a tenth of a mile, next it slowed to almost a stop, and
22   then it sped up to about 90 miles per hour (mph) in a 45 mph zone.
     \\\
23   \\\

24

25   [1]Respondent admits that Petitioner has exhausted his state remedies and does not allege that the petition is untimely.
     (*See* Answer at 2).

26   [2]The factual background is derived from the factual summary set forth in the unpublished opinion of the California
27   Court of Appeal, Fifth District.  A determination of fact made by a state court is presumed correct, pursuant to 28 U.S.C.
     §§ 2254(e)(1), and must be rebutted by the petitioner with clear and convincing evidence.  As Petitioner has not alleged that
28   the factual findings of the State court were wrong, and has cited the facts as stated by the appellate court in his petition, the
     Court finds that the presumption fo correctness stands.

Deputy Pogue's patrol vehicle could not safely keep up with the Mustang, so he allowed a gap of about 700 feet between them. They came upon two cars traveling in the same direction and the Mustang attempted to illegally pass those vehicles on the left across a double yellow line. As the Mustang passed the two cars, it lost control, spun around, and rolled off the side of the mountain. Deputy Pogue temporarily lost sight of it. Within about three seconds, Deputy Pogue stopped his patrol vehicle and got out to look for occupants. He shined his flashlight, but there was a large amount of dust and he could not immediately find the Mustang. Deputy Pogue told the occupants to stay in the Mustang, that he was coming to them; however, a male voice yelled the car was going to explode, so Deputy Pogue called the occupants to come out to him. He saw a male with a shaved head and a female with long hair exit the Mustang, which was on its roof with the passenger side facing the deputy. They both came out of the passenger's side window. Deputy Pogue does not recall who exited first, however, they both exited on their own. As Deputy Pogue came down the embankment, he saw Moore exit the vehicle about 40 feet directly below him. Deputy Pogue told Moore "stop, show me [your] hands or I w[ill] send the canine." The record does not indicate that Deputy Pogue actually had a canine with him. Deputy Pogue asked the male "why didn't you stop?" The male replied it was because he "didn't have a license." Shortly thereafter, once Deputy Pogue had crossed over a fence and was within arm's reach, he handcuffed Moore. Deputy Pogue did not say anything to Moore regarding Miranda rights.

The male had a pretty serious gash on his head, which was bleeding profusely. When Deputy Pogue handcuffed him, the male started going into tremors. The male was taken by ambulance and then helicoptered to a hospital.

Deputy Pogue testified that the male was Moore and the female was Loraine Nichols, who is about 5feet one inch tall. At trial, Deputy Pogue viewed a photo of Nichols and testified she definitely was not the person he "saw behind the vehicle" when he shined his patrol vehicle's lights at the start of the attempt to pull it over because "[s]he obviously has lots of hair" and he was 100 percent positive the driver had a shaved head. At trial, he also viewed a booking photo of Moore that was taken nine days after the incident; it showed appellant with extremely short hair, which was slightly longer than it was on that night.

Deputy Pogue briefly searched the rough terrain around the crash site, but he did not find any object such as a crowbar. He ran the Mustang's vehicle identification number (VIN) and determined that its owner was Chris Carrizosa.

Carrizosa testified that in late June of 2003, his primer gray, black striped 1966 Ford Mustang, which was equipped with high-back seats from a 1995 Mustang, was stolen. About a week later, he was contacted by law enforcement once the car was recovered. The car's VIN matched, but it was now painted black, it had different license plates, its top and all its fenders were smashed, and it was not drivable. Carrizosa never gave Moore permission to drive it. As for the high-back seats, Carrizosa testified they had a head rest and came up to about head level, but if the driver was tall, the driver's head could be seen from behind. Carrizosa testified that he is 5 feet 7 inches or 5 feet 8 inches and his head goes over the top of the head rest.

In defense, Moore denied driving the Mustang. He claimed his girlfriend-now wife-Loraine Nichols was driving and that he was seat-belted into the passenger's seat when the accident occurred. According to Moore, Nichols had just lost control and went over a cliff. Moore admitted that they were avoiding the officer at the time. According to Moore, he had told Nichols to run because his friend, who was in a

white truck next to them, had a sawed-off shotgun.

After the crash, Moore and Nichols were screaming because gas was pouring in the car. Although the deputy told him not to move, he grabbed a crowbar from the hood, which had hit him in the head when the car flipped, and he pounded on the window with it until the window broke. Then he came out the door and pulled Nichols out of the car, which was upside down with its whole top and driver's side crushed in. He did not recall saying anything to any officer.

Moore testified he guessed blood was pouring out of his head, although he does not really recall. He testified he is six feet tall and could have been bald, whereas Nichols is about five feet or five feet one inch and had a full head of hair. He confirmed the booking photo was taken nine days after the incident.

Moore denied knowing the Mustang was stolen. He testified Nichols bought it when it was nonoperable and a friend had towed it. Moore builds cars and restores them. He put a whole new electronic "starting thing" under its hood and they repaired it so it would run.

(Lod. Doc. 4 at 4-7).

### DISCUSSION

**I.    Jurisdiction and Venue**

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution and Petitioner's custody arose from a judgment of the Madera County Superior Court. Madera County is within this judicial district. 28 U.S.C. § 84(b). As Folsom State Prison is located in Sacramento County, the Eastern District of California has jurisdiction and is the proper venue to hear the case. *See id*.; *see also* 28 U.S.C. § 2241(d) (stating that an application for writ of habeas corpus may be filed in the district court where Petitioner was sentenced).

**II.    ADEPA Standard of Review**

In April 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by*

1   *Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)).  The

2   instant petition was filed in 2007 and is consequently governed by AEDPA's provisions, which

3   became effective on April 24, 1996.  *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003).

4   　　　　As Petitioner is in the custody pursuant to a state court judgment, Title 28 U.S.C. section

5   2254 remains the exclusive vehicle for Petitioner's habeas petition.  *Sass v. California Board of*

6   *Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002,

7   1006 (9th Cir. 2004) in holding that § 2254 is the exclusive vehicle for a habeas petitioner in custody

8   pursuant to a state court judgment even where the petitioner is not challenging his underlying state

9   court conviction).  Under AEDPA, a petition for habeas corpus "may be granted only if [Petitioner]

10  demonstrates that the state court decision denying relief was 'contrary to, or involved an

11  unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

12  the United States.'"  *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. §

13  2254(d)(1)); *see Lockyer*, 538 U.S. at 70-71.

14  　　　　As a threshold matter, this Court must "first decide what constitutes 'clearly established

15  Federal law, as determined by the Supreme Court of the United States.'"  *Lockyer*, 538 U.S. at 71

16  (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this

17  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of

18  the time of the relevant state-court decision." *Id.* (quoting *Williams*, 592 U.S. at 412). "In other

19  words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or

20  principles set forth by the Supreme Court at the time the state court renders its decision." *Id.*

21  　　　　Finally, this Court must consider whether the state court's decision was "contrary to, or

22  involved an unreasonable application of, clearly established Federal law." *Lockyer*, 538 U.S. at 72,

23  (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant

24  the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

25  question of law or if the state court decides a case differently than [the] Court has on a set of

26  materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72.

27  "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state

28  court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

1    applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  "[A] federal

2    court may not issue the writ simply because the court concludes in its independent judgment that the

3    relevant state court decision applied clearly established federal law erroneously or incorrectly.

4    Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the

5    "unreasonable application" inquiry should ask whether the state court's application of clearly

6    established federal law was "objectively unreasonable." *Id.* at 409.

7         Petitioner bears the burden of establishing that the state court's decision is contrary to or

8    involved an unreasonable application of United States Supreme Court precedent.  *Baylor v. Estelle*,

9    94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth

10   Circuit precedent remains relevant persuasive authority in determining whether a state court decision

11   is objectively unreasonable.  *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v.*

12   *Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

13        AEDPA requires that a federal habeas court give considerable deference to State court

14   decisions. The State court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1).

15   Furthermore, a federal habeas court is bound by a State's interpretation of its own laws.  *Souch v.*

16   *Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537

17   U.S. 1149 (2003).

18   **III.    Review of Petitioner's Claim**

19        Petitioner sets forth two grounds for relief in his petition for writ of habeas corpus.  Petitioner

20   contends that his constitutional rights were violated by 1) the lengthy delay from the time of the

21   initial complaint to trial and 2) the admission of a statement Petitioner made prior to being advised of

22   his *Miranda* rights.[3]

23        *A.    Sixth Amendment Right to a Speedy Trial*

24        Petitioner contends that the period of time between the time the filing of the initial complaint

25   (August 5, 2003) to when trial commenced (July 19, 2005) violated his Sixth Amendment right

26   under the United States Constitution.  Petitioner also alleges violation of State law stemming from

27

28        [3]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

1    the delay.

2        Petitioner presented this claim to both the California Court of Appeal and the California

3    Supreme Court.  The Court of Appeal was the only state court to issue a reasoned opinion in

4    Petitioner's case.  When reviewing a state court's summary denial, the Court "look[s] through"

5    summary disposition to the last reasoned decision.  *See Shackleford v. Hubbard*, 234 F.3d 1072,

6    1079 n. 2 (9th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)).  Thus, the

7    California Supreme Court is presumed to have adjudicated Petitioner's claim for the same reasons

8    cited by the California Court of Appeal in their reasoned decision.  *See Ylst v. Nunnemaker*, 501 U.S.

9    at 803.

10       The United States Constitution vests in criminal defendant "the right to a speedy and public

11   trial."  U.S. Const., Amend. VI; *see also Doggett v. United States.*, 505 U.S. 647, 651 (1992).  The

12   Supreme Court has articulated a four-part balancing test to determine whether a criminal defendant

13   has been deprived of his right to a speedy trial.  *Id*. (citing *Barker v. Wingo*, 407 U.S. 514, 530

14   (1972)); *see also United States v. Tanh Huu Lam*, 251 F.3d 852, 855 (9th Cir. 2001). The four

15   factors that a court must consider are: (1) the length of the delay; (2) the reasons for the delay; (3) the

16   defendant's assertion of the right to speedy trial; and (4) the prejudice caused by the delay.  *Barker*,

17   407 U.S. at 530; *see also McNeely v. Blanas*, 336 F.3d 822, 826 (9th Cir. 2003) (applying test in

18   AEDPA context).  None of the four factors alone are necessary or sufficient to find that Petitioner

19   has been deprived of his constitutional rights.  *Id*. (citing *Barker*, 407 U.S. at 530).

20       Here, the California Court of Appeal correctly identified the factors to balance in determining

21   whether Petitioner's Sixth Amendment right to a speedy trial was violated.  (Lod. Doc. 4 at ).  The

22   State appellate court concluded that the balance of the *Barker* factors, though, weighed against

23   finding that Petitioner's constitutional rights had been violated, stating that:

24          With respect to Moore's Sixth Amendment speedy trial claim, we balance Moore's
            lack of actual prejudice and the absence of any evidence in the appellate record
25          showing that the delay was intentional on the part of the district attorney against a
            delay of approximately 20 months. After weighing the Barker factors, we find that
26          Moore's Sixth Amendment right to a speedy trial has not been violated. ( *Barker*,
            *supra*, 407 U.S. 514.) Thus, we reject Moore's claims that his right to a speedy trial
27          was violated.

28   (Lod. Doc. 4 at 10-11).

Respondent correctly notes that, "the first *Barker* factor–length of the delay–is actually a dual inquiry.  As a threshold matter, only if the delay is 'presumptively prejudicial' must the court inquire into the remaining *Barker* factors."  (Answer at 15) .  The *Barker* court stated that "[t]he length of the delay is to some extent a triggering mechanism.  Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."  *Barker*, 407 U.S. at 530.  Respondent contends that a presumption of prejudice does not attach to a twenty month period, arguing that the Supreme Court has not explicitly held that anything lower than six years compels a *Barker* inquiry.[4]  Respondent gives little weight to the Supreme Court's statement in *Doggett*, 505 U.S. at 652, n. 1, that lower courts have generally attached a presumption of prejudice, and thus conducted a *Barker* inquiry, where the delay approaches one year. The fact that the California Court of Appeal examined the other *Barker* factors indicates that the appellate court also found the delay of twenty months presumptively prejudicial.  Additionally, previous Ninth Circuit authority has found a six month delay to be a borderline case of presumptive prejudice requiring examination of the other three factors.  *See United States v. Valentine*, 783 F.2d 1413, 1417 (9th Cir. 1986) (citing *United States v. Simmons*, 536 F.2d 827, 831 (9th Cir. 1976)).

However, a delay of twenty months does not necessarily weigh heavily in Petitioner's favor as this period is not excessively long.  *See United States v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003) (holding that twenty-two month delay between first indictment and trial date raised presumption of prejudice and triggered *Barker* inquiry but did not weigh heavily in the defendant's favor as it was not excessively long).   Here, the California Court of Appeal found that the balance of the *Barker* factors weighed against Petitioner as Petitioner failed to demonstrate prejudice resulting from the delay and there was no evidence that the delay was intentional on the part of the prosecution.  The California Court of Appeal found unpersuasive Petitioner's contention that his ability to call Loraine Nichols and the testimony of Deputy Pogue were impaired by the delay such

---

[4]Respondent derives the six years from the Supreme Court's decision in *Doggett*, which found that the government was responsible for six of the eight and a half year delay.  (Answer as 15-16).  However, it is unclear why Respondent cites six years as the minimum when the *Barker* court clearly found that "the length of delay between arrest and trial–well over five years–was extraordinary," and concluding that a four year delay attributable to the State was too long a period.  *Barker*, 407 U.S. at 533-534.  Obviously, the *Barker* court found a delay of less than six years triggered a *Barker* inquiry.

1    that Petitioner's defense was prejudiced.  The appellate court stated that:

2            Moore claims that he suffered actual prejudice from the delay because of loss
         of evidence due to fading memory attributable to the delay [Citation] and loss of a
3        material witness due to lapse of time [Citation]. However, in both cases, there was no
         prejudice to Moore's case.
4            With respect to loss of evidence, Moore claims that Deputy Pogue's lack of
         memory of who got out of the car first prejudiced Moore's defense that he was not the
5        driver. However, Deputy Pogue's lack of memory would likely assist Moore's defense
         case as the defense could use the lack of memory to challenge Deputy Pogue's
6        recollection that, when he was pursuing the car, he saw that the driver of the car was a
         person with a shaved head.
7            With respect to the loss of a material witness, Moore claims that the inability
         to locate and subpoena Loraine Nichols prejudiced his defense because she could
8        have testified that she was the driver. However, the trial court noted that Loraine
         Nichols would be "of no assistance to Mr. Moore.... [I]n fact, all her statements given
9        to the law enforcement officers implicate Mr. Moore." Appellant does not challenge
         this finding by the trial court, which is also corroborated by the probation officer's
10       report.

11   (Lod. Doc. 4 at 10).

12           In considering the reasons for the delay, the State court did not articulate an actual motive for

13   the delay but concluded that there was no evidence of an improper motive behind the prosecution's

14   delay.[5]  *See United States v. Marion*, 404 U.S. 307, 325 (1971) (holding it would be improper for the

15   prosecution to intentionally delay with the purpose of gaining a tactical advantage over the

16   defendants or to harass them); *see also McNeely*, 336 F.3d at 827.  Petitioner has not presented any

17   evidence to rebut this conclusion; thus, the Court cannot disturb the State court's factual finding that

18   there was no evidence of improper motive for the delay.  *See* 28 U.S.C. § 2254(e)(1).

19           While the State court did not explicitly address Petitioner's assertion of his rights in its

20   *Barker* analysis, the California Court of Appeal noted that Petitioner did challenge the delay under

21   the Due Process Clause and made six demands pursuant to California Penal Code section 1381.[6]

22   Thus, the State court considered the proper factors.  It is clear, however, that the State court gave

23

24           [5]Respondent asserts that the Court should not place the burden on the prosecution to explain the delay as there is
     no explicit Supreme Court holding to support such a proposition. As Respondent also notes, controlling authority in the Ninth
25   Circuit had held that the prosecution bears the burden of explaining pretrial delays for the purposes of the second *Barker*
     factor.  *See McNeely*, 336 F.3d at 827.
26

27           [6] This provision of the California Penal Code states that "the district attorney of the county in which the matters are
     pending shall bring the defendant to trial or for sentencing within 90 days after the person shall have delivered to said district
28   attorney written notice of the place of his or her imprisonment or commitment and his or her desire to be brought to trial or
     for sentencing."  Cal. Penal Code § 1381.

1    more consideration and weight to the lack of prejudice and absence of an improper motive than

2    Petitioner's continued assertion of his rights and the length of the delay.  The Court does not find that

3    the State court's balancing of these factors to be an objectively unreasonable application of *Barker* or

4    *Doggett*.  Therefore, the Court does not find that Petitioner is entitled to habeas corpus relief on this

5    ground.[7]

6            **B.       Ground Two: Miranda**

7            Petitioner contends that the trial court's admission of his response to Deputy Pogue's

8    question about why he did not stop violated his constitutional rights as he was not advised of his

9    *Miranda* rights prior to the question.

10           Petitioner raised this claim to the California Court of Appeal and the California Supreme

11   Court respectively.  The State appellate court rejected Petitioner's constitutional claim, finding that

12   the was not in custody and thus no *Miranda* warnings were required.  As the Court of Appeal was

13   the only state court to issue a reasoned opinion, the Court presumes that the California Supreme

14   Court's summary denial was based on the same reasoning offered by the appellate court.  *See Ylst v.*

15   *Nunnemaker*, 501 U.S. at 803.  The Court initially notes that the State court's determination that

16   Petitioner was not in custody is a mixed question of law and fact and thus is not entitled to a

17   presumption of correctness under 28 U.S.C. § 2254.  *See Thompson v. Keohane*, 516 U.S. 99, 106-

18   107 (1995) (reversing Ninth Circuit denial of habeas petition based on Circuit precedent that a State

19   court's determination regarding whether a defendant is in custody of *Miranda* purposes was a factual

20   finding entitled to presumption of correctness under 28 U.S.C. § 2254(d)).  Additionally, as there is

21   no factually on-point Supreme Court case, the State court's determination is subject to the

22   unreasonable application clause of 28 U.S.C. section 2254.  *See Williams*, 529 U.S. at 407-408

23   (explaining contrary to clause of § 2254).

24   \\\

25   \\\

26   ─────────────────

27           [7]Petitioner also contends that the delay violated his rights pursuant to California Penal Code section 1381.  The State
     court concluded that the lack of prejudice, discussed above, defeated such a claim.  It is not the province of a federal habeas
     court to inquire into whether there was an error of State law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Thus, Petitioner
28   is not entitled to relief based on the assertion the State court erred under section 1381.

1    In *Miranda v. Arizona*, 384 U.S. at 444, the Supreme Court held the admission of statements

2    resulting from a custodial interrogation violated a criminal defendant's Fifth Amendment privilege

3    against self-incrimination where the statements were not preceded by appropriate warnings . The

4    first inquiry thus is whether Detective Pogue's questioning of Petitioner constituted a custodial

5    interrogation. "Whether a person is in 'custody or otherwise deprived of his freedom of action in any

6    significant way,' [citation] is answered by reviewing the totality of facts involved at the time of the

7    alleged restraint." *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981) (citing *Miranda*, 384

8    U.S. at 444).  In *Miranda*, 384 U.S. at 444, the United States Supreme Court defined custodial

9    interrogation to mean "questioning initiated by law enforcement officers after a person has been

10   taken into custody or otherwise deprived of his freedom of action in any significant way." The

11   ultimate "in custody" determination for *Miranda* purposes requires two discrete inquires: "first, what

12   were the circumstances surrounding the interrogation; and second, given those circumstances, would

13   a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave."

14   *Thompson*, 516 U.S. at 112.

15   The State court's factual findings with regard to circumstances of the interrogation are

16   entitled to a presumption of correctness. *Id*. The circumstances, as set forth in the appellate court's

17   opinion, were that after the car Deputy Pogue was pursuing had rolled off the side of the mountain:

18   > Deputy Pogue told the occupants to stay in the Mustang, that he was coming to them;
     > however, a male voice yelled the car was going to explode, so Deputy Pogue called
19   > the occupants to come out to him. He saw a male with a shaved head and a female
     > with long hair exit the Mustang, which was on its roof with the passenger side facing
20   > the deputy. They both came out of the passenger's side window. Deputy Pogue does
     > not recall who exited first, however, they both exited on their own. As Deputy Pogue
21   > came down the embankment, he saw Moore exit the vehicle about 40 feet directly
     > below him. Deputy Pogue told Moore "stop, show me [your] hands or I w[ill] send
22   > the canine." The record does not indicate that Deputy Pogue actually had a canine
     > with him. Deputy Pogue asked the male "why didn't you stop?" The male replied it
23   > was because he "didn't have a license." Shortly thereafter, once Deputy Pogue had
     > crossed over a fence and was within arm's reach, he handcuffed Moore. Deputy Pogue
24   > did not say anything to Moore regarding Miranda rights.

25   (Lod. Doc. 4 at 5).

26   Based on those circumstances, the State court concluded that Petitioner was not in custody.

27   Citing to the Supreme Court's decision in *Berkemer*, the California Court of Appeal pointed to the

28   duration of the detention, Deputy Pogue only asked one question, Petitioner was not being physically

1    restrained, and only one officer was questioning Petitioner as factors that would have lead a

2    reasonable person to have concluded they were not in custody.  (*Id.*).

3         The test articulated in *Thompson* is a "general rule," which the Supreme Court has

4    admonished requires "more leeway" as general rules, as opposed to specific rules, "can demand a

5    substantial element of judgement."  *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) (applying

6    AEDPA deference in *Miranda* context).  As in *Yarborough*, "fairminded jurists could disagree over

7    whether [Petitioner] was in custody" as "certain facts weigh against a finding that [Petitioner] was in

8    custody." *Id*.  Here, the facts stated by the appellate court, especially the duration of the detention

9    and number of questions asked by Deptuy Pogue, obviously weigh heavily against finding that

10   Petitioner was in custody.  Conversely, the fact that the questioning occurred immediately after a

11   high speed car chase involving the questioning officer supports the finding that a reasonable person

12   would not have thought they were free to leave.  However, considering the leeway afforded the State

13   courts in applying general rules, the Court does not find the State court's conclusion constitutes an

14   objectively unreasonable application of clearly established federal law.  Consequently, Petitioner is

15   not entitled to relief on this ground.

16        Lastly, even if Petitioner could establish that his rights were violated by the admission of

17   these statements, the State court's conclusion that the error was harmless beyond a reasonable doubt

18   was not objectively unreasonable.  (*See* Lod. Doc. 4 at 13).  If a State court applied the appropriate

19   standard of review in disposing of a constitutional error as harmless, the dispositive inquiry before

20   the federal habeas court is whether the State court's harmless error analysis was objectively

21   unreasonable.  *See Arizona v. Fulimante*, 409 U.S. 279, 306-312 (1991) (holding that violation of

22   *Miranda* does not require automatic reversal)*; see also Medina v. Hornung*, 386 F.3d 872, 878 (9th

23   Cir. 2004); *Inthavong v. Lamarque*, 420 F.3d 1055, 1058-1059 (9th Cir. 2005) (citing *Mitchell v.*

24   *Esparza*, 540 U.S. 12, 17-18 (2003) and *Medina*, 386 F.3d at 878-879) for proposition that State

25   appellate court's ruling that the admission of Petitioner's statement was harmless is entitled to

26   deference unless it conflicts with the reasoning or holdings contained in Supreme Court precedents

27   or if the State court's application of the harmless error standard was objectively unreasonable).

28   \\\

1    Noting that there existed sufficient evidence outside of Petitioner's statement upon which a

2    trier of fact could have found that Petitioner was the driver of the vehicle,[8] the Court does not find

3    this conclusion by the State court to be objectively unreasonable.

4    **IV.    Certificate of Appealability**

5    A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a

6    district court's denial of his petition, and an appeal is only allowed in certain circumstances. *Miller-*

7    *El v. Cockrell*, 123 S.Ct. 1029, 1039 (2003). The controlling statute in determining whether to issue

8    a certificate of appealability is 28 U.S.C. § 2253, which provides that a circuit judge or judge may

9    issue a certificate of appealability where "the applicant has made a substantial showing of the denial

10   of a constitutional right." Where the court denies a habeas petition, the court may only issue a

11   certificate of appealability "if jurists of reason could disagree with the district court's resolution of

12   his constitutional claims or that jurists could conclude the issues presented are adequate to deserve

13   encouragement to proceed further." *Miller-El*, 123 S.Ct. at 1034; *Slack v. McDaniel*, 529 U.S. 473,

14   484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate

15   "something more than the absence of frivolity or the existence of mere good faith on his . . . part."

16   *Miller-El*, 123 S.Ct. at 1040.

17   In the present case, the Court finds that reasonable jurists would not find the Court's

18   determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or

19   deserving of encouragement to proceed further. Petitioner has not made the required substantial

20   showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a

21   certificate of appealability.

22   \\\

23   \\\

24   \\\

25

26   [8]Deputy Pogue testified that the driver of the Mustang had a shaved head. A picture of Petitioner soon after the

27   incident showed Petitioner with extremely short hair. Petitioner testified that Nichols was the driver but Deputy Pogue disputed that as Nichols had lots of hair. Obviously, the jury chose to believe Deputy Pogue's assertion that the drive had short hair and that consequently, Petitioner, and not Nichols was the driver. Furthermore, as alluded to by the State court,

28   the height of the headrest in the vehicle would have obstructed the view of someone from the rear, thereby preventing them from seeing the head of the driver if the driver was of Nichols height.

## <u>ORDER</u>

Accordingly, IT IS HEREBY ORDERED that:

1. The Petition for Writ of Habeas Corpus is DENIED with prejudice;

2. The Clerk of Court is DIRECTED to enter judgment; and

3. The Court DECLINES to issue a certificate of appealability.


IT IS SO ORDERED.

**Dated:    July 10, 2009                          /s/ John M. Dixon**
UNITED STATES MAGISTRATE JUDGE